**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:14-C-00326-1 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DAVID GODWIN | ) | |

**ORDER**

As ordered during the convened (but not completed) sentencing hearing and as memorialized in R. 490, Defendant Godwin filed a witness proffer on what was supposed to be the amount of loss, R. 495, and the government has responded, R. 496. (The Defendant also filed supplemental sentencing filings, R. 493, 494, and the government's filing also responds to those, but those supplements are not the direct subject of this order.) Pursuant to the procedure set forth in R. 486 and 490, this order is the decision addressing the subpoena requests based on the witness proffer.

On review of the defense witness proffer, R. 495, and the government's response, R. 496, the Court excludes 9 of the 10 witnesses as live witnesses compelled by subpoena, because Godwin has not established the relevancy of these witnesses in challenging the loss amount (with one exception, co-defendant Anthony Roth). Remember that the specific basis for continuing the sentencing hearing was because Godwin wanted to challenge the loss amount. R. 486. None of the summaries of the witnesses' proposed testimony directly references the loss amount. The AT&T loss amount is based on approximately $3.2 million paid on commissions for six purported customers (ALP, Multipoint, Carrier, Telworx, Greenwave, and Darling). R. 321, PSR, Gov. Version at 10–11 (and exhibits cited on those pages); *id.* at 39–40; *see id.* Exh. Financial Summary. The Forest Capital and Vion loss amounts are based on the allegedly fraudulent representation that Hutchison owed $8 million to ContinuityX. R. 321, PSR, Gov. Version at 21–36 (and cited exhibits). Even reading the summaries expansively, there is no basis to authorize a subpoena for any of the witnesses (except Roth). Here is a witness-by-witness discussion.

**1. William Kolman.** According to Godwin, Kolman is a former Vice President of Telx and can testify about meetings that "included discussions about revenue, billing, network[,] and facilities within Telx's buildings." R. 495 at 1. But this is vague in

the extreme, and makes no connection to the challenged loss amounts. The only other description as to Kolman is AT&T's purported inability to provide the contracted services. R. 495 at 1. That has no bearing on the AT&T loss amount, which is calculated based on the $3.2 million in commissions paid by AT&T for the six purported customers. No subpoena shall issue to Kolman.

**2. Steven Cap.** The proffer says that Cap was a Project Manager at Remprex, and was a former Sales Engineer at AT&T. R. 495 at 1. According to Godwin, Cap "can speak specifically to AT&T's failures and inabilities of delivering ordered services." *Id*. Again, AT&T's failure to deliver contracted services is neither here nor there for purposes of the loss amount. Aside from that, Cap supposedly engaged in "[d]iscussions [that] included confirmation of [r]evenue requested by John Fox and other investors." *Id*. What revenue? For which purported customers? One of the six on which the loss-amount commissions are based? Which one? What did Cap say? Basis foundational information is missing to make this relevant. Cap is excluded.

**3. David Helfrey.** According to Godwin, Helfrey was a board member of ContinuityX and its corporate counsel. The proffer describes Helfrey's knowledge of various aspects of ContinuityX's business practices. R. 495 at 2. "Most importantly he interacted with AT&T and Hutchison." *Id*. But there is no explanation of how any interaction between Helfrey and AT&T plus Hutchison bear on the loss amount, whether as to AT&T, Forest Capital, or Vion. The government's loss theory as to Forest Capital and Vion is premised on the $8 million that the Defendant represented to them was owed by Hutchison to ContinuityX. Yet the proffer says nothing along the lines of Helfrey is going to testify that the enormous sum really was owed by Hutchison. Lastly, according to Godwin, Helfrey's "knowledge will explain there was no plan of deception or fraud created by myself, Tony Roth, and John Coletti." *Id*. But there is no further explanation of what that exculpatory "knowledge" is. This witness too is excluded.

**4. Jacob Wonsover.** The proffer says that Wonsover was a consultant for ContinuityX and helped ContinuityX deal with investors. R. 495 at 2. Again, the proffer is devoid of any hint on how Wonsover would speak to the AT&T loss amount (or Forest Capital or Vion for that matter). This witness has no relevant testimony to offer.

**5. David Barnes.** Godwin says that Barnes was the CFO of ContinuityX for four to six months. R. 495 at 2. Again, all the proffer does is say that Barnes can testify as to the "relationship" with John Fox and that Barnes "attended" meetings

with Fox. *Id.* But no details are offered about the relationship or the meetings, let alone any concrete facts on what Barnes would do to address the loss amount. Barnes is not relevant to the sentencing.

**6. Anthony Roth.** Without any further specificity, Godwin accuses Roth of making "false statements as to conduct and actions about myself." R. 495 at 3. It is true that this proffer comes perilously close to simply declaring that Godwin wants to cross-examine Roth without saying why and on what topics. Having said that, Roth's cooperation is significant because he identifies Godwin as the ringleader who instructed Roth to falsify financial statements. R. 161 at 7. Yes, there is substantial documentary evidence, direct evidence, and circumstantial evidence apparently showing the fraud schemes even without Roth, but Roth's cooperation is damning.

The Court thus will permit Godwin to call Roth as an adverse witness and cross-examine him (the government of course may redirect after the cross on whatever specific lines of inquiry generated admissible evidence, if any). But without a preview of even the *topics* of examination, the Court warns that Godwin must focus on eliciting relevant and admissible evidence, not free-range examine Roth. If the cross-examination wanders and Godwin pursues objectionable lines of inquiry, then at some point the Court will set a time limit for Godwin to finish. Given the cooperation agreement, the Court asks the government to arrange for Roth's testimony, either in-person or by video (there is no Confrontation Clause right at sentencing, and Roth recently underwent surgery (or at least was scheduled for it)).

**7./8./9. John White, Jeff Quinn, Melissa Pariana.** Godwin says that these three AT&T employees managed the relationship with ContinuityX. R. 495 at 3. They also attended meetings with customers, including Hutchison and Forest Capital. *Id.* But no concrete fact is offered to explain how any of the three employees would undermine the loss amount. They are excluded.

**10. John Fox.** Godwin accuses Fox of making "several" false statements about Godwin (and about John Coletti). R. 495 at 3. Yet Godwin identifies no particular statement. It is one thing to make a general broadside against the *cooperator* (Roth), and for that to be enough for the Court to grant a request to cross-examine the cooperator (though, again, the examination must be focused on admissible and relevant evidence). It is quite another to require the *victim* to undergo cross-examination with zero explanation of what Godwin hopes to elicit. Fox need not testify.

3

**Conclusion.** No witness subpoenas shall issue, except the government is requested to produce Roth (without a subpoena) for the sentencing. The Court notes that Godwin of course still may arrange for a *voluntary* appearance of any mitigation or character witness (including any of the 9 rejected witnesses) who is willing to speak on 18 U.S.C. § 3553(a) goals and factors, such as Godwin's personal characteristics. And Godwin still may file the already-scheduled written reply brief on loss amounts, which is due on October 22, 2021, and offer affidavits or exhibits. R. 490. But the sentencing then will convene on October 28, 2021, at 9:30 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 15, 2021